UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STACY POWER and<br>AL B. HILL,<br>as Receiver for Credit<br>Nation Capital, LLC, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs | )<br>) | CIVIL ACTION FILE<br>NO._____ |
| v. | )<br>)<br>) | JURY TRIAL DEMANDED |
| ERIE FAMILY LIFE<br>INSURANCE COMPANY, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## COMPLAINT

Stacy Power, individually, and Al B. Hill, as Receiver for Credit Nation Capital, LLC, plead as follows for their complaint against the Defendant Erie Family Life Insurance Company ("Defendant"):

### I.

### INTRODUCTION

1. On November 10, 2015, the United States Securities and Exchange Commission ("SEC") filed a complaint seeking injunctive relief and damages against Credit Nation Capital, LLC ("CN Capital"), Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti

01115975-8

Junction, LLC (collectively, the "Receivership Companies") and James Torchia. The SEC also sought the appointment of a receiver for the Receivership Companies and Torchia. The case is pending as Civil Action No. 1:15-cv-3904-WSD in the United States District Court for the Northern District of Georgia (the "SEC Litigation").

2. In the SEC Litigation, the SEC alleged that Torchia and the Receivership Companies participated in two fraudulent investment schemes through the sale of unregistered securities to the investing public. One of the alleged schemes involved the sale of millions of dollars of promissory notes that touted a high return to investors, and the other involved the sale of fractional interests in life settlement contracts whereby the purchasers were promised shares of life insurance proceeds when the insureds died.

3. Plaintiff Stacy Power ("Plaintiff") invested $120,000 with CN Capital on January 20, 2016, for the purchase of the CN Capital's entire interest in the life insurance policy in the name of S. Creighton. The S. Creighton Policy, Policy No. ******2220 with an effective date of March 24, 2005, was issued by Defendant Erie Family Life Insurance Company with a death benefit of $200,000 (the "Policy").

4. On April 25, 2016, the Court in the SEC Litigation entered an order granting a preliminary injunction and asset freeze against Torchia and the Receivership Companies and appointing Al B. Hill as Receiver ("the Receiver") of the Receivership Companies and Torchia (the "Receivership Order"). An accurate copy of the Receivership Order is attached as Exhibit 1.

5. On May 10, 2016, Defendant was notified by the Securities and Exchange Commission ("SEC") that an immediate freeze was placed on the Policy and that Defendant could not permit transfers of ownership or changes to the beneficiary. Defendant was further notified that only the Receiver was empowered to make changes and/or decisions with respect to the Policy. Defendant was finally notified that the Receiver could be contacted at 1600 Parkwood Circle, Suite 400, Atlanta, Georgia 30339. *See* letter to Erie Family Insurance from the U.S. Securities and Exchange Commission dated May 10, 2016, attached hereto as Exhibit "2."

6. Plaintiff and the Receiver bring this action against Defendant to force reinstatement of the Policy that was improperly terminated by Defendant for non-payment of premiums. As will be explained below, Defendant's refusal to reinstate the Policy results in an inequitable windfall to Defendant to the detriment of Plaintiff.

## II.

## **THE PARTIES**

7.  Defendant Erie Family Life Insurance Company is a corporation duly organized and existing pursuant to the laws of the State of Pennsylvania with its principal place of business located at 144 E. 6th Street, Erie, Erie County Pennsylvania.  Defendant may be served with a summons and copy of this Complaint through its Secretary Brian W. Bolash, 100 Erie Insurance Place, Attn: COR, Erie, Pennsylvania 16530-0001.

## III.

## **JURISDICTION AND VENUE**

8.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1692 and 754 because the Policy, property of the Receivership, is located in this district, which is also where the Receiver was appointed.  This action is ancillary to the receivership.  Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and venue lies in this judicial district.

9.  The Court also has jurisdiction over the Defendant under Georgia's long-arm jurisdiction statute, O.C.G.A. § 9-10-91, because Defendant did business in this judicial district and this action is directly related to that business, including

sending policy renewal notices to Georgia, making policy changes requested in Georgia and receiving funds drawn on CN Capital's bank accounts in Georgia.

10. In addition, this action arises from and is directly related to the SEC Litigation, which provides for nationwide service of process under the federal securities laws, 15 U.S.C. §§ 77v(a) and 78aa.

## IV.

## **FACTUAL ALLEGATIONS**

### A. Background.

11. From 2009 to 2015, CN Capital raised money by selling unregistered three-year and five-year promissory notes to investors. The investors were promised a 9% to 11% fixed return and were told that their promissory notes were "100% asset backed." CN Capital told promissory note investors that it expected to generate returns from its investments in excess of the interest payable on the notes.

12. CN Capital used the money it raised, in part, to purchase life insurance policies, either from the insureds or from settlement companies that act as brokers. Upon maturity of each policy (i.e. death of the insured) if the death benefit on the policy was greater than the total of the purchase price and the premiums paid, CN Capital would profit from the insurance investment.

13. After acquiring a life insurance policy, CN Capital either held it or sold it, in whole or in part. It sold fractional interests in policies to investors either directly or through its affiliate, Credit Nation Acceptance, LLC. Investors who purchased these fractional interests expected to receive a portion of the death benefit when the insured died.

14. When CN Capital sold fractional interests or entire policies to investors, CN Capital obligated itself to pay some, if not all, of the future premiums on the policies. The investment thus depended on the continued performance of CN Capital to pay premiums during that term. If CN Capital failed to pay future premiums, the policy would lapse and the investor would receive no return on the investment.

15. CN Capital acquired the Policy from S. Creighton on October 22, 2015 for $72,500.

16. Following the acquisition of the Policy, Defendant, at the request of S. Creighton, changed the beneficiaries of the Policy from Ann Marie Creighton to Jim Torchia and Marc Celello, both of whom were agents of CN Capital.

17. Thereafter, CN Capital remitted premium payments on the Policy to Defendant.

18. On January 19, 2016, CN Capital sold the Policy to Plaintiff for $120,000; however, CN Capital remained liable for payment of the premiums on the Policy and management of the Policy.

19. After the sale, at the request of CN Capital, Defendant changed the beneficiary on the Policy to Plaintiff; however, notices to Plaintiff, including invoices for payment of premiums, were to be sent to Plaintiff in care of CN Capital at its address listed at 585 Molly Lane, Woodstock, Georgia.

20. On April 25, 2016, this Court placed CN Capital into receivership because the financial condition of CN Capital and its affiliates had deteriorated, with total assets of just over $12 million and total liabilities of $45.7 million, yielding a net worth of negative $33.7 million. Outstanding investor promissory notes exceeded $44 million.

21. The Receiver was appointed on April 25, 2016, and obtained immediate exclusive jurisdiction and possession of the assets of CN Capital, which included the Policy because CN Capital had retained the requirement to remit premiums and manage the Policy.

22. On May 10, 2016, Defendant was notified that CN Capital's assets were frozen and only the Receiver was empowered to make changes and/or

decisions with respect to the Policy. *See* Exhibit 2. Defendant was provided with the Receiver's address. *Id.*

23. Tasked with operating CN Capital, the Receiver sought approval from the Court to dispose of certain insurance policies, including the Policy, because CN Capital's cash flow was insufficient to cover premium payments.

24. On May 25, 2016, the district court approved the disposition and ordered that on any policy where direct investors were named beneficiaries on the life insurance policy, like Plaintiff was so named on the Policy, the direct investors could keep their respective life insurance policies if they remitted to the Receiver the value of the benefit they received from CN Capital. [1:15-cv-03904-WSD, Doc. 120, page 11.]

25. On June 7, 2016, the Receiver offered Plaintiff the Policy so long as Plaintiff remitted $764.23 to the Receivership.

26. On June 21, 2016, the Plaintiff accepted the Receiver's offer for the Policy and paid the Receiver $764.23.

27. The Receiver then delivered all paperwork on the Policy to Plaintiff.

28. In July 2016, Plaintiff contacted Defendant and spoke to its agent, Betsy Wygant, at extension 3302 (the "Telephone Call"). During the call, Plaintiff provided Defendant his name, mailing address, email address, and telephone

number, and Defendant confirmed receipt of the same. Defendant confirmed that the Policy was not canceled, that the Policy was paid current through March 2017, and that Plaintiff was the beneficiary of the Policy.

29. During the Telephone Call, Defendant confirmed that there were no premiums due at that time and told Plaintiff that "everything was good" with the Policy.

30. In the Telephone Call, Defendant "guaranteed" that there were no issues with the Policy; Plaintiff asked that Defendant "notify" Plaintiff of anything regarding the Policy; and Defendant, through Ms. Wygant, "assured" Plaintiff they would contact him if any issues arose regarding the Policy.

31. After the Telephone Call ended, Plaintiff did not think about the Policy again until May 6, 2017, when he contacted Defendant and was told that the Policy was canceled for non-payment.

32. Apparently and unbeknownst to Plaintiff and the Receiver, in February 2017, Defendant continued to list CN Capital as the manager/administrator of the Policy despite Defendant being notified otherwise by both the SEC and Plaintiff. Notwithstanding that the SEC provided Defendant with the address of the Receiver and that Plaintiff provided his address to the Defendant, nevertheless, in February 2017, Defendant sent two notices to remit

payment of the premium for the Policy to CN Capital's former address on 585 Molly Lane, Woodstock, Georgia, which was shuttered by the Receiver in July 2016. Upon receiving the first notice returned undeliverable, Defendant sent the notice again, to the same address on Molly Lane. The second notice was returned undeliverable.

33. Despite having the Receiver's and Plaintiff's contact information on file and despite Defendant "assuring" Plaintiff that it would contact Plaintiff if any issues arose regarding the Policy and despite receiving an undeliverable notice from the USPS, Defendant did not contact the Receiver or Plaintiff regarding remittance of the premium on the Policy.

34. By lapsing the Policy without adequate notice to the Plaintiff and in violation of Defendant's promises and representations to Plaintiff, the Defendant prevented the Receiver from completing the delivery of the Policy to Plaintiff and also violated the Court's freeze order as explained in the SEC letter.

35. Following the cancellation of the Policy, Plaintiff and the Receiver asked for the Policy to be reinstated.

36. Defendant refused to reinstate the Policy.

37. To date, Defendant has received premiums of around $6,000 on the Policy.

38. Prior to commencing suit, the Receiver, his counsel, and Defendant's counsel attempted to work out a resolution of the issues.

39. After Defendant communicated its final decision to not reinstate the Policy due to the current health conditions of S. Creighton, the Receiver, in a last attempt to avoid litigation, asked Defendant to share information supporting its contentions that Defendant was not subject to jurisdiction in this Court and that it was justified in its refusal to reinstate the Policy.

40. In response, Defendant's counsel stated:

*We do not think it would be productive to share documents regarding the Creighton policy at this time. With respect to the jurisdictional issue you inquired about, Erie is not subject to the jurisdiction of a Georgia court; however, if you have any evidence to the contrary, we would be happy to consider it.*

See email from Tracy Ledbetter to Receiver dated February 2, 2018, and attached hereto as Exhibit "3."

# V.

# CAUSES OF ACTION

## COUNT 1

### Plaintiff's and the Receiver's Claim to reinstate the Policy

41. Plaintiff and the Receiver incorporate by reference each of the allegations set forth in paragraphs 1 through 40 above, as if fully set forth herein.

42. Defendant has a contractual obligation to provide life insurance on S. Creighton in exchange for the remittance of premium payments.

43. Defendant was notified by the SEC that the Policy was frozen, that only the Receiver was empowered to make changes or decisions with respect to the Policy, and that the Receiver could be contacted at his physical and email address. Nevertheless, Defendant failed to notify the Receiver of the non-payment of the premium and the impending lapse of the Policy.

44. Despite Plaintiff being listed as the beneficiary, Plaintiff being assured by Defendant that Plaintiff would be contacted concerning any future issues regarding the Policy, and Defendant being provided the Plaintiff's name, address, and contact information, Defendant failed to notify Plaintiff of the non-payment of the premium and the impending lapse of the Policy.

45. Defendant breached its contractual obligation to Plaintiff and to the Receiver, for which Plaintiff and the Receiver have been damaged.

46. For Defendant's breach, Plaintiff and the Receiver are entitled to specific performance, reinstating the Policy in exchange for payment by Plaintiff of premiums due from March 2017 to current.  eq

## COUNT 2

### Plaintiff's Claim for Promissory Estoppel

47. Plaintiff and the Receiver incorporate by reference each of the allegations set forth in paragraphs 1 through 40 above, as if fully set forth herein.

48. As his alternative claim, Plaintiff seeks to have the policy reinstated under the theory of promissory estoppel.

49. In July 2016, Plaintiff contacted Defendant from his home in South Carolina and provided Defendant his name and contact information. Plaintiff asked Defendant to contact him if any issues arose concerning the policy, and Defendant confirmed that it would do so.

50. Defendant was unambiguous in its agreement to contact Plaintiff in the event an issue arose concerning the policy, i.e., Defendant "assured" Plaintiff that it would contact him.

51. Plaintiff reasonably relied upon Defendant's promise and assurance that it would contact him regarding the policy.

52. It was foreseeable and expected by Defendant that Plaintiff would rely on Defendant's assurance and promise.

53. In Defendant's failing to contact Plaintiff regarding payment of the premium, choosing instead to simply re-send to the same address where mail was being returned and subsequently cancelling the policy, Plaintiff has suffered an injury in reliance on Defendant's promise and assurance. Injustice can be avoided only by enforcement of Defendant's promise to allow Plaintiff a fair opportunity to pay the past-due premiums and reinstate the policy.

54. Plaintiff is entitled to have the Policy reinstated in exchange for payment by Plaintiff of premiums due from March 2017 to current.

## COUNT 3

### Claims for Equitable Relief

55. Plaintiff and the Receiver incorporate by reference each of the allegations set forth in paragraphs 1 through 40 above, as if fully set forth herein.

56. As an alternative claim, Plaintiff and Receiver assert claims in equity to restore the Policy because the remedy at law is inadequate.

57. Plaintiff and Receiver are entitled to have the Policy reformed resulting in reinstatement.

58. Defendant was notified by the SEC that the Receiver was empowered to make changes to the Policy and was provided the Receiver's name, address, and contact information. Exhibit 2.

59. Further, Defendant's agent assured Plaintiff that it was Defendant's intent to contact Plaintiff regarding any issues which arose regarding the Policy.

60. The failure of Defendant to send the premium notice on the Policy to the Receiver or to Plaintiff was Defendant's mistake.

61. Defendant's mistake in failing to send the premium notice to Plaintiff or Receiver was unintentional; Plaintiff and the Receiver had misplaced confidence that Defendant would contact them regarding the Policy.

62. Equity demands that Defendant's mistake in failing to send the premium notice to Plaintiff and the Receiver is relievable.

63. Plaintiff and the Receiver are entitled to have the Policy reinstated as a matter of equity.

64. Plaintiff and the Receiver request that the Court issue a mandatory injunction requiring Defendant to notify Plaintiff and the Receiver of the unpaid

premiums and to reinstate the Policy upon receipt of Plaintiff's payment of those premiums.

## COUNT 4

### Negligence by Defendant

65. Plaintiff and the Receiver incorporate by reference each of the allegations set forth in paragraphs 1 through 40 above, as if fully set forth herein.

66. In the SEC Litigation, on April 25, 2016, the district court granted Receiver immediate and exclusive jurisdiction and possession of the Assets of CN Capital, which included the Policy.

67. On May 10, 2016, Defendant was notified by the SEC that the Policy was frozen and only the Receiver was empowered to make changes and/or decisions with respect to the Policy.

68. Upon entry of the Order on April 25, 2016, and notice of the freeze on May 10, 2016, a legal duty of Defendant to the Receiver commenced, requiring Defendant to notify the Receiver regarding the Policy.

69. Defendant breached its legal duty to the Receiver when it negligently failed to notify the Receiver that the premium payment on the Policy was due and owing, despite having received all of the Receiver's contact information.

70. As a result of Defendant's negligence, Defendant canceled the Policy, an asset of the Receivership, for nonpayment, proximately causing a loss to the Receivership.

71. Defendant has caused the Receivership to suffer damages as a result of Defendant's negligence in an amount to be determined upon the trial of this matter.

## COUNT 5

### Attorneys' Fees

72. Plaintiff and the Receiver incorporate by reference each of the allegations set forth in paragraphs 1 through 40 above, as if fully set forth herein.

73. Prior to commencing this action, the Receiver attempted to seek reinstatement by engaging in discussions with Defendant's counsel, Tracy Ledbetter.

74. Defendant, through its agent, rejected all attempts for reinstatement.

75. The Receiver asked Defendant to provide any information which Defendant believed supported its denial of reinstatement or of lack of personal jurisdiction.

76. In response, Defendant refused to comply, stating further communication would "not be productive."

77. In essence, Defendant has taken a "so sue me" attitude for which attorneys' fees are recoverable under O.C.G.A. § 13-6-11 for Defendant's bad faith and stubbornly litigious behavior.

78. Defendant's "so sue me" attitude is resulting in expenses being borne by the Receivership to the detriment of hundreds of investors.

WHEREFORE, Plaintiff and the Receiver request upon a jury trial of this matter that judgment be entered against Defendant, ordering reinstatement of the Policy upon Plaintiff's payment of premiums necessary to bring the Policy current, and that the Court further award Plaintiff and the Receiver their reasonable attorneys' fees and costs of this action, as well as such other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of March, 2018.

/s/ Amy W. Weber
Amy W. Weber
Georgia Bar No. 773736
aweber@taylorenglish.com
William G. Leonard
Georgia Bar No. 446912
bleonard@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, GA  30339
770.434.6868

*Attorneys for Plaintiffs Stacy Power and Al B. Hill, in his capacity as Receiver*