IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STACY POWER and                      : CIVIL ACTION
AL B. HILL, as Receiver for          : NO. 18-02094
Credit Nation Capital, LLC,          :
                                     :
        Plaintiffs,                  :
                                     :
v.                                   :
                                     :
ERIE FAMILY LIFE INSURANCE           :
COMPANY,                             :
                                     :
        Defendant.                   :


**M E M O R A N D U M**


EDUARDO C. ROBRENO, J.                          August 1, 2019


        Plaintiff Stacy Power ("Power") is the owner of a life

insurance policy ("the policy") that Erie Family Life Insurance

Company ("Erie") issued to Stephen Creighton ("Creighton" or

"the insured").  At some point in the past, Creighton sold his

interest in the policy to Credit Nation Capital, LLC ("Credit

Nation").  Power bought the policy as an investment from Credit

Nation, and named the Power Living Trust as the beneficiary.

        The policy terminated when Power did not make timely

premium payments.  Power claims that the termination was in

breach of the terms of the policy.  He also claims that the

termination was improper based on principles of promissory estoppel and equity. He seeks reinstatement of the policy.

Plaintiff Al Hill ("Hill") is the court-appointed receiver of Credit Nation. Hill also seeks reinstatement of the policy.

For its part, Erie seeks declaratory judgment that the policy was properly terminated, and that Erie is not required to reinstate the policy.

Present before the Court are Plaintiffs' Motion for Partial Summary Judgment, and Erie's Motion for Summary Judgment. For the reasons set forth below, the Court will grant Erie's Motion for Summary Judgment as to Power's claims, dismiss Hill's claims for lack of standing, and deny Erie's counterclaim for declaratory judgment as moot.

## I.    BACKGROUND

In 2005, Erie issued to Creighton a life insurance policy on his life. ECF No. 48 Ex. A. In 2015, the policy was bought by James Torchia and Marc Celello, with both owners listed as beneficiaries. See ECF No. 47 Ex. A-2; ECF No. 48 Ex. C. Torchia and Celello listed the same address in Woodstock, Georgia (the "Georgia address"). ECF No. 47 Ex. A-2. Erie mailed a confirmation of the change of ownership to Torchia at the Georgia address, stating that "[t]he payor has been changed

2

to James Torchia." Id. Ex. C. The payor address is where the owner wants to receive non-payment notices.

In January 2016, Power bought the policy from Torchia and Celello via their company Credit Nation Capital, LLC. ECF No. 47 Exs. A-4, C, D; ECF No. 48 Ex. D. The change of ownership form identified Power's address as the same Georgia address as Torchia and Celello, and the form listed Power Living Trust as the sole beneficiary, with an address in Yonges Island, South Carolina (the "South Carolina address"). ECF No. 47 Ex. A-4. Erie mailed a confirmation of the change of ownership and beneficiary to Power at the Georgia address. ECF No. 48 Ex. D.

The purchase agreement between Power and Credit Nation made Power responsible for all future premium payments, while Credit Nation would retain the file for management purposes. ECF No. 47 Ex. B-1. However, pursuant to an oral agreement (not otherwise described by the parties), Credit Nation agreed to pay the premiums on the policy for the first four years. Id. Ex. C at 21, 29, 31-32. Credit Nation made payment that kept the policy in force until March 2017.

In April 2016, Credit Nation was placed into receivership under a receivership order issued by the United States District Court for the Northern District of Georgia for alleged fraudulent investment schemes. See SEC v. Torchia, 922

F.3d 1307, 1312 (11 Cir. 2019).  Hill was appointed as the

receiver ECF No. 47 Ex. B-4.

Power became concerned about his investment after

hearing rumors of problems with Credit Nation.  In May 2016,

Power placed a call to Erie and "requested that the payor

address remain the same [Georgia address] but that the owner

address be updated" to Power's address the South Carolina

address.  ECF No. 47 Ex. A-8, C at 51-52.  According to Power,

but disputed by Erie, Power also asked Erie's agent to contact

him "in case anything was to happen" to the policy, and the

agent told Power that "nothing would happen to the policy

without [Power] being notified."  ECF No. 48-2 ¶ 14.  After

Power's phone call, Erie sent a letter to Power at the South

Carolina address confirming "a change of address was processed

on [the] policy."  ECF No. 48 Ex. J.

After Credit Nation had been placed in receivership,

Hill became the administrator of the policy, and was tasked with

disposing of the assets in which Credit Nation had an interest.

Id.  Hill offered to Power the same terms provided in the

receivership order for retaining ownership of the policy.  ECF

No. 47 Ex. B-5, C.  If Power accepted the terms, Power would be

responsible for all future premium payments.

On June 21, 2016, Power accepted the terms and mailed

the acceptance form to Hill.  ECF No. 48 Ex. I.  On June 26,

4

2016, Credit Nation emailed Power stating that it had received the acceptance letter and payment required by the receivership order.  ECF No. 47 Exs. B-6, E (Power's admission that he received the email).  The email told Power to "be sure to update [Erie] with your name and address as the premium payor on record.  You will want to make sure you receive any and all correspondence from [Erie] regarding your policy.  The current paid-to-date on your policy is: 03/24/2017."  Id.

Despite the email's express instruction, Power did not request Erie to change the address of the payor from the Georgia address to the South Carolina address.  ECF No. 47 Ex. C.

In February and April of 2017, Erie sent notices to Power at the payor address on file--the Georgia address--stating that a premium payment was due under the policy.  ECF No. 47 Exs. A-10, A-11, A-12.  Power apparently did not receive these notices and did not pay the premium on time.  Consequently, at the end of the grace period, the policy terminated according to its terms.  ECF No. 47 Exs. D, F.

At the end of June 2017, Power called Erie to make a payment but was informed that the policy had terminated.  ECF No. 48 Ex. R.  Furthermore, because an additional, non-policy "easy reinstatement" period had run, Erie required a reinstatement application.  Id.; ECF No. 48 Ex. Q.  Erie

5

rejected Power's request to waive this requirement.  See ECF No. 48 Ex. S.

In September and October 2017, Erie contacted Creighton to offer him the chance to apply for reinstatement. ECF No. 48 Ex. T.  Creighton applied but Erie declined to reinstate the policy due to Creighton's current tobacco use and medical history.  ECF No. 47 Exs. A-15, A-16.

## II.  DISCUSSION

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Jurisdiction is based on diversity of citizenship in that Erie is a Pennsylvania corporation, Power is a citizen of South Carolina, and Hill is a citizen of Georgia.  28 U.S.C. § 1332.

As a threshold matter, both sides base their arguments in Pennsylvania law; the policy was issued to a Pennsylvania resident (Creighton) by a Pennsylvania corporation (Erie). Thus, the Court will apply Pennsylvania law in this case.

### A.  Hill's Claims

Hill, as the Receiver for Credit Nation, lacks Article III standing.  To establish Article III standing under the Constitution, a party must have suffered an injury that is "concrete, particularized, and actual or imminent; fairly

6

traceable to the challenged action; and redressable by a favorable ruling." <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 149 (2010). Furthermore, a party must meet certain prudential requirements, including that he assert his own legal interests rather than those of a third party. See <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 126 (2014); <u>Adams v. Governor of Del.</u>, 922 F.3d 166, 176 (3d Cir. 2019).

The record shows that Power bought the policy from Credit Nation in January 2016, but apparently Credit Nation retained some interest in the policy. In June 2016, the Receivership transferred to Power whatever interest Credit Nation had retained in the policy, including any obligations Credit Nation had to make premium payments. Therefore, after June 2016, Credit Nation (and the Receivership) no longer had any legal or equitable interest in the policy. Under these circumstances, the Receivership suffered no injury-in-fact when the policy terminated in April 2017. Hill's suit on behalf of the Receivership will be dismissed for lack of standing.

**B. Power's Claims**

Power asserted myriad causes of action and theories of recovery: breach of contract; promissory estoppel; "equitable relief;" negligence; and attorney's fees.

7

## 1. Contract

It is undisputed that Power instructed Erie to send payment notices to the Georgia address.  This instruction was never countermanded by Power, even after receiving an email from Credit Nation expressly informing Power of his need to correct the payor address.  As far as Erie was concerned, the Georgia address was the only location to which notices were to be sent to the payor, in this case Power.

Under the plain terms of the policy, payment of a premium is required to be made before the expiration of 31 days after that premium's payment date.  If the premium was not received, the policy would terminate.  And if the policy owner wanted to reinstate the policy, the reinstatement provisions would have to be met.  Moreover, the policy placed no requirement on Erie specifically to notify Power of payment due dates.  Nevertheless, Erie sent Power two notices as a reminder that payment must be made in the time-frame allowed by the policy in order to keep the policy in force.

Power argues that Pennsylvania law[1] required Erie to provide notice of termination because the policy did not automatically terminate.  Power is incorrect.  By its plain

---

[1]     Power does not argue that Erie owed a fiduciary duty to Power in that Power is not the insured under the policy.  Nor does he contend that Erie owed Power a heightened duty of care under Pennsylvania law.

terms, the policy terminated 31-days after the date on which a premium was due if the premium remained unpaid.  Furthermore, the cases cited by Power are inapposite, in that they concern group health insurance policies, not an individual life insurance policy.

In short, neither the terms of the policy nor any provision of Pennsylvania law require a notice of termination to be sent to Power before the policy would terminate for non-payment of premiums.

Power argues that Erie did not act in good faith by failing to take certain actions before the policy terminated. Good faith is defined in Pennsylvania as "[h]onesty in fact in the conduct or transaction concerned."  Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) (quoting 13 Pa. Cons. Stat. § 1201).  Examples of bad faith can include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."  Id. (quoting Restatement (Second) of Contracts, § 205 cmt. d (1981)).

For evidence of lack of good faith, Power points to Erie's own internal business practices which provide guidance to Erie's employees as to what steps to take when correspondence sent by Erie is returned undelivered.  See ECF No. 47 Exs. A-13,

A-14.  But Power's attempt misses the mark.  Assuming that

Erie's internal business practices apply to correspondence with

a payor (as opposed to an insured), whether Erie failed to

follow them in this case is not material.  Erie's internal

business practices are to assist Erie and its employees with

internal operations and administration, and they do not create a

duty on the part of Erie which may be enforced by a third-party

payor.  Nor do they modify or supplement the express terms and

obligations under the policy.[2]

In any event, Erie did send two payment reminder

notices to Power at the payor address that he had designated.

That the notices went to an address where Power did not receive

them, Power has no one to blame but himself.

Under the undisputed facts here, Power cannot show

that Erie acted in bad faith by inter alia evading the spirit of

the bargain, lacking diligence, slacking off, or interfering

with Power's performance.  Indeed, the record shows that it was

Power who lacked diligence by failing to notify Erie of the

correct payor address.

No reasonable jury could find that Power was excused

from making payments under these circumstances.

---

[2]      To the extent that business practices could be
material where a fiduciary relationship exists, Power is not so
situated.  See supra n.1.

10

## 2. **Promissory Estoppel & Equitable Relief**

The plain terms of the policy also preclude recovery under promissory estoppel and the issuance by the Court of equitable relief. Pennsylvania law does not allow relief for a claim of promissory estoppel when it contradicts, modifies, or supplements an enforceable contract. Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (applying Pennsylvania law); see also W. Chester Univ. Found. v. MetLife Ins. Co. of Conn., 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017) ("As Plaintiff does not contest the validity of the Policies at issue, this Court must dismiss Plaintiff's claim for promissory estoppel as a matter of law."); Tomlinson v. Checkpoint Sys., Inc., No. CIV.A. 06-2205, 2008 WL 219217, at *6 (E.D. Pa. Jan. 25, 2008) ("Promissory estoppel should not be used to supplement or modify a written, enforceable contract.").

Power claims that he asked Erie's agent to contact him "in case anything was to happen" to the policy and the agent in turn promised that "nothing would happen to the policy without [him] being notified." ECF No. 48-2 ¶ 14. Such a promise, if one was made by Erie's agent is broad and vague, and is too indefinite to be enforced. See, e.g., C & K Petroleum Prod., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988) (holding that an action for promissory estoppel could not be maintained where premised on a "broad and vague" promise "to administer the main

11

checking account . . . in the normal, banking fashion"); MRO Corp. v. Humana Inc., 383 F. Supp. 3d 417 (E.D. Pa. 2019) ("Under Pennsylvania law, . . . [t]here must be an express promise . . . ; a 'broad or vague implied promise' will be deemed insufficient.  To qualify as an express promise, . . . the promise must indicate with 'reasonable certainty' the intent of the parties.").

Nor will invoking general notions of equity save Power.  The express terms of the policy terminate it for non-payment of a premium, and it is undisputed that Power did not timely make payment.  There is no inequity in enforcing the plain terms of the policy.

### 3.  Negligence

Power cannot bring a claim for negligence because his claim is barred as a matter of law by the economic loss rule. Under Pennsylvania law, the economic loss rule bars recovery if the allegedly-breached duty arises under a contract between the parties.  Dittman v. UPMC, 196 A.3d 1036, 1054 (Pa. 2018) (explaining that the bar to recovery turns on whether the duty arises from a contact or the duty is independent of a contract); see also Duhring Res. Co. v. United States, No. 18-1289, 2019 WL 2359392, at *4 (3d Cir. June 4, 2019) (discussing the economic loss rule as explained in Dittman).

### 4. Economic Loss

Power argues that Erie "is prohibited from raising the economic loss rule as a defense . . . because it is time barred and without permission from this Court," citing Federal Rule of Civil Procedure 12(b). ECF No. 56 at 18. However, this argument lacks merit because economic loss is not an affirmative defense that can be waived, but is more "akin to a challenge that a party has failed to state a claim upon which relief can be granted," which can be asserted at trial. See Sayre v. Customers Bank, No. CV 14-3740, 2017 WL 2439551, at *9 (E.D. Pa. June 6, 2017); see also Keokuk Glycerin, LLC v. Midwest Labs., Inc., No. 3:14-CV-111-JAJ-HCA, 2015 WL 12866981, at *3 (S.D. Iowa May 22, 2015) ("The economic loss doctrine, however, is not a defense which must be affirmatively alleged.").

### 5. Attorney's Fees

Finally, because Power does not prevail on any of his substantive claims, Power cannot recover attorney's fees (under any state's law).

## C. Erie's Counterclaim

Erie seeks a declaratory judgment that Erie properly terminated and properly declined to reinstate the policy, and that Erie is not required to reinstate the policy. ECF No. 22, Counterclaim ¶¶ 29-31.

Erie's counterclaim is rendered moot by the entry of
judgment against Power and in favor of Erie on Power's claims.
Accordingly, in the Court's exercise of discretion, <u>see</u> 28
U.S.C. § 2201(a), Erie's counterclaim for declaratory judgment
will be dismissed.

**III. CONCLUSION**

Erie prevails in this lawsuit.  Hill lacks standing to
bring claims against Erie on this policy in which he has no
interest and has suffered no injury-in-fact.  There is no
genuine issue of material fact as to at whose door lies the
blame for the termination of the policy, and Erie is entitled to
judgment as a matter of law on Power's claims.  Finally, because
summary judgment will be awarded in favor of Erie and against
Power on Power's claims, Erie's counterclaims for declaratory
judgment will be dismissed as moot.

An appropriate order follows.